**Office of Disciplinary Counsel v. Brown**

Disciplinary Board Docket no. 64 D.B. 2003.

NEWMAN, *Member,* July 15, 2004—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme

Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

On May 13, 2003, Office of Disciplinary Counsel filed a petition for discipline against Gustee Brown, respondent in these proceedings. The petition charged respondent with practicing law while on inactive status in Pennsylvania. Respondent filed an answer on June 13, 2003.

A disciplinary hearing was held on October 24, 2003, before Hearing Committee 4.10 comprised of Chair Joseph M. Gaydos, Esquire, and Members Lawrence M. Kelly, Esquire, and David Kyle Harouse, Esquire. Respondent appeared pro se.

The Hearing Committee filed a report on April 19, 2004, finding that respondent engaged in misconduct and recommending that he be suspended for one year followed by one year of probation and a practice monitor.

The parties did not file briefs on exception to the report.

This matter was adjudicated by the Disciplinary Board at the meeting of May 18, 2004.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner, whose principal office is located at Suite 1400, 200 North Third Street, Harrisburg, PA 17101, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and duty to investigate all matters involving alleged misconduct

of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

(2) Respondent, Gustee Brown, was born in 1958 and was admitted to practice law in the Commonwealth in 1996. His office address is Masonic Square, 32 W. 8th Street, Erie, PA 16501. Respondent is subject to the disciplinary jurisdiction of the Disciplinary Board of the Supreme Court.

(3) Respondent was transferred to inactive status for failure to pay annual fees pursuant to Pa.R.D.E. Rule 219 by Supreme Court order dated November 30, 2000, effective December 30, 2000.

(4) Pursuant to the November 30, 2000 order, respondent was ordered to comply with the provisions of Rule 217, Pa.R.D.E.

(5) Rule 217 provides, in pertinent part:

"(a) Orders transferring an attorney to inactive status shall be effective 30 days after entry;

"(b) The formerly admitted attorney shall promptly notify or cause to be notified by registered or certified mail, all litigation and non-litigation clients of the transfer to inactive status;

"(c) The formerly admitted attorney shall promptly notify, or cause to be notified, by registered or certified mail, the attorney or attorneys for each adverse party in a pending litigation matter of the transfer to inactive status;

"(d) The formerly admitted attorney shall also promptly notify or cause to be notified, by registered or certified mail, all persons, whether agents or guardians to

whom a fiduciary duty is or may be owed at any time after the transfer to inactive status, or with whom the formerly admitted attorney may expect to have professional contacts under circumstances where there is a reasonable possibility that they may infer that the formerly admitted attorney continues as an attorney in good standing." Rule 217(a), (b), (c), (d), Pa.R.D.E.

(6) Further, Rule 217 provides that, within 10 days after the effective date of the suspension, the formerly admitted attorney shall file with the board a certified statement showing full compliance with provisions of the order and these rules. Rule 217(e), Pa.R.D.E.

(7) By certified letter dated November 30, 2000, Elaine M. Bixler, executive director and secretary of the Disciplinary Board, forwarded to respondent a copy of the court's November 30, 2000 order directing that respondent be transferred to inactive status.

(8) The November 30, 2000 letter was sent to respondent's then attorney registration address, 5701 Yellowleaf Drive, Richmond, VA 23234-5954, by certified mail. The certified mail card reflects that the letter was received and signed for by Gilda B. Johnson on December 6, 2000.

(9) The letter informed respondent that he was required to comply with the Pennsylvania Rules of Disciplinary Enforcement and the Disciplinary Board Rules enclosed with the letter.

(10) A statement of compliance with Rule 217 was never filed by respondent with the Disciplinary Board.

(11) Respondent did not provide any proof to the office of the secretary that he gave notice to his clients whose matters were pending on December 30, 2000, or

to clients whom he represented after that date, of his transfer to inactive status.

(12) Respondent began part-time employment with the public defender's office in Erie as an assistant public defender in October 2000.

(13) During the course of his employment in Erie, the public defender's office received complaints about respondent from district justices that respondent was missing appointments and hearings.

(14) Chief Public Defender Christine Konzel met with respondent and informed him that if he continued to miss hearings he would lose his job.

(15) In February 2002, shortly after the meeting with Ms. Konzel, respondent resigned his position.

(16) Chief Public Defender Konzel did not learn of respondent's transfer to inactive status until a telephone conversation with Erie County President Judge William Cunningham in late July 2002.

(17) After an article appeared in the *Erie Times,* the public defender's office received numerous telephone calls from public defender clients or their family members regarding respondent's transfer to inactive status.

(18) The notice of his transfer to inactive status was sent to respondent at his sister's address in Virginia, which respondent described as being his "most secure address." (N.T. 50.)

(19) Respondent was transient at that time and designated his sister's address as the place to receive his most important papers.

(20) At the time respondent was on inactive status in December 2000, he was living with his in-laws in Ak-

ron, Ohio. Respondent commuted to the public defender's office in Erie from Akron.

(21) Respondent's sister forwarded mail to him in Akron, but he did not pay attention to it and he was not diligent in collecting his mail.

(22) Respondent believes that his sister did forward the notice of inactive status to him.

(23) Respondent believes he put the notice of inactive status on the top of the television in his living room.

(24) Respondent was aware that notices from attorney registration contained bills that had to be paid.

(25) Respondent's understanding was that if a lawyer did not pay fees over a three-year period, that lawyer is transferred to inactive status. If that occurred, then the lawyer had to go before the board and petition to restore active status.

(26) Respondent never called the attorney registration office in Lemoyne to determine his status, nor to ask questions concerning the rules, paying dues on a yearly basis, and the consequence of not paying dues.

(27) Respondent first came to know of the problem with his inactive status when it appeared in a newspaper article in the *Erie Times.*

(28) On July 2, 2002, respondent paid the attorney registration fees for the 2000-2001, 2001-2002, and 2002-2003 years and was reinstated to active status.

(29) Data gathered by the court administrator of Erie County indicated that respondent was attorney of record in 120 cases during his period of inactive status, and 10 to 15 of those cases were in respondent's capacity as private counsel.

(30) While on inactive status, respondent represented at least 97 defendants in criminal matters from January 2001 through February 2002 in his capacity as an assistant public defender.

(31) During respondent's period of inactive status, he was involved in 13 jury trials, eight of which ended in conviction of the defendant.

(32) When respondent's clients learned of his inactive status, some instituted actions to withdraw guilty pleas and file PCRAs on the basis that respondent was not duly licensed.

(33) Two Pennsylvania Superior Court opinions resulted from these actions, which affirmed the convictions with the rationale that the mere fact that respondent was not licensed because he did not pay his fees did not make him per se ineffective.

(34) A series of articles appeared in the local *Erie Times* newspaper and the president judge of the common pleas court received numerous telephone calls from people across the state.

(35) Respondent did not apologize to President Judge Cunningham or Chief Defender Konzel.

(36) Respondent's current practice is limited to about two or three cases every few months.

(37) During respondent's inactive period, he was going through a divorce, his mother was ill and his former wife took his son to Tennessee.

(38) Respondent stayed in Erie because he is currently in a custody dispute and the court in Erie has jurisdiction.

(39) Respondent is exploring alternative means of employment.

(40) Respondent has no prior history of discipline.

## III. CONCLUSIONS OF LAW

By his conduct as set forth above, respondent violated the following Rules of Professional Conduct:

(1) R.P.C. 5.5(b)—A lawyer shall not practice law in a jurisdiction where to do so would be in violation of regulations of the profession in that jurisdiction.

(2) R.P.C. 8.4(d)—It is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice.

(3) Pa.R.D.E. 217(b)—A formerly admitted attorney shall promptly notify or cause to be notified, by registered or certified mail, all clients who are involved in pending litigation or administrative proceedings, and the attorney or attorneys for each adverse party in such matter or proceeding, of the disbarment, suspension, or transfer to inactive status and consequent inability of the formerly admitted attorney to act as an attorney after the effective date of the disbarment, suspension or transfer to inactive status.

(4) Pa.R.D.E. 217(c)(1) and (2)—A formerly admitted attorney shall promptly notify or cause to be notified, of the disbarment, suspension or transfer to inactive status, by registered or certified mail, all persons or their agents or guardians to whom a fiduciary duty is or may be owed at any time after the disbarment, suspension or transfer to inactive status; and all other persons with whom the formerly admitted attorney may at any time expect to have professional contacts under circumstances where there is a reasonable probability that they may infer he or she continues as an attorney in good standing.

(5) Pa.R.D.E. 217(e)—Within 10 days after the effective date of the disbarment, suspension or transfer to inactive status order, the formerly admitted attorney shall file with the board a verified statement showing that the provisions of the order and the rules have been fully complied with, and all other state, federal and administrative jurisdictions to which such person is admitted to practice. The statement shall set forth the residence or other address of the formerly admitted attorney where communications to such person may thereafter be directed.

## IV. DISCUSSION

Petitioner bears the burden of proving violations of the Rules of Professional Conduct by a preponderance of the evidence that is clear and satisfactory. *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986). In this matter, by respondent's stipulations to the factual averments contained in the petition for discipline and other evidence of record, petitioner has met its burden.

The record demonstrates that respondent engaged in the unauthorized practice of law while on inactive status and represented approximately 120 clients in criminal cases, 97 of those as an assistant public defender in Erie County. Respondent's misconduct damaged the integrity of the judicial system in Erie County by creating the perception that the public defender's office in Erie County was incompetent. Respondent's misconduct triggered litigation from some of respondent's clients to withdraw guilty pleas and file PCRA actions on the basis that respondent was ineffective because he was not licensed. Respondent's practice of law without a

license caused prejudice to the administration of justice in Erie County.

Respondent began working for the public defender's office in October 2000. Respondent was transferred to inactive status effective December 30, 2000, for failure to pay his attorney registration fee. Respondent continued to work as a public defender until February 2002, some 15 months later. Respondent does not contest the fact that a notice of inactive status was sent to him at his registered address and that he in fact received the notice. Respondent believes that he placed the notice on his television set. Clearly respondent was irresponsible in not reading his mail and contacting the office of the executive director and secretary. Respondent also does not dispute the fact that he received notices from attorney registration and that he knew they contained bills requiring payment. Respondent labored under the belief that if he did not pay his registration fees for three years he would have to petition the board to restore his active status. The conclusion can be drawn from respondent's testimony that he engaged in a conscious decision not to pay his registration fees with the idea that he would simply ask the board to restore his active status at a later time. The thought does not appear to have crossed respondent's mind that he was ineligible to actually practice law until he paid his fees. Respondent made no attempt to contact attorney registration to confirm his beliefs as to his status. Respondent is subject to discipline for his acts of misconduct.

It is well established that the appropriate disciplinary sanction is based on the nature and gravity of the misconduct and the aggravating and mitigating factors present. *In re Anonymous No. 85 D.B. 97,* 44 D.&C.4th

299 (1999). There are no significant aggravating or mitigating circumstances in this case. Respondent has not been the subject of prior discipline. Respondent did not mistreat clients and there is no evidence that he mishandled cases. Respondent did mishandle the subject of his own professional standing. An attorney is expected to be aware of the status of his privilege to practice law. Respondent received the notice of inactive status but by his own testimony admitted that he did not pay attention to it. Respondent was aware that attorney registration sent him notices and he knew that a fee was required to be paid. Again, respondent did not pay attention to these notices. Respondent wrongly believed that if he did not pay attorney fees for three years he would be placed on inactive status and then would need to restore his active status. Respondent never contacted attorney registration to verify whether this was true. He simply continued to practice law. Respondent's failure to attend to his professional licensure, resulting in his unauthorized practice of law, demonstrates a general unfitness to practice law in Pennsylvania. Respondent testified to some problems in his personal life that have distracted him, but, while the board is sympathetic to these problems, their existence does not serve to excuse his misconduct, the consequences of which are serious.

The Supreme Court has stated that it will not tolerate a lax approach to the disciplinary process. *Matter of Leopold,* 469 Pa. 384, 366 A.2d 227 (1976). The court has considered the problem of attorneys who continue to practice law while on inactive status. In the matter of *In re Anonymous No. 123 D.B. 96,* 41 D.&C.4th 290 (1998), an attorney continued to practice law while on inactive status, even handling a case until the day before

his disciplinary hearing. The board noted that the unauthorized practice was limited in scope and the attorney had no prior record. The attorney did not mishandle or mistreat the client, but rather mistreated the matter of his own professional standing. The board recommended and the court imposed a suspension for a period of six months. In the matter of *In re Anonymous No. 53 D.B. 2000,* 753 disciplinary docket no. 3 (Pa. July 10, 2002), the attorney engaged in the unauthorized practice of law and shared legal fees with a non-lawyer entity. The court imposed a suspension of one year and one day. In the matter of *In re Anonymous No. 131 D.B. 1999,* 660 disciplinary docket no. 3 (Pa. March 23, 2001), the attorney practiced law over a three-month period while on inactive status. He entered his appearance in five criminal court matters and appeared in court to represent his client. He had six instances of prior discipline. The court suspended the attorney for one year and one day.

The board is persuaded that a suspension of one year followed by probation for two years is warranted on the basis of the extent and scope of respondent's unauthorized practice of law, balanced by his lack of prior discipline and his admitted personal problems.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania recommends that the respondent, Gustee Brown, be suspended from the practice of law for a period of one year followed by probation for a period of two years, subject to the following conditions:

(1) Respondent shall select a practice monitor subject to the approval of the Office of Disciplinary Counsel.

(2) The practice monitor shall do the following during the period of respondent's probation:

(a) Meet with the respondent at least monthly to examine respondent's progress towards satisfactory and timely completion of client legal matters, including regular communication with clients in returning telephone calls and responding to written correspondence;

(b) Periodically examine respondent's law office organization and procedures to ensure that respondent is maintaining an acceptable tickler system, filing system, and other administrative aspects of respondent's practice;

(c) File quarterly written reports on a board-approved form with the executive director and secretary of the board; and

(d) Shall immediately report to the executive director and secretary of the board any violations by the respondent of the terms and conditions of probation.

It is further recommended that the expenses incurred in the investigation and prosecution of this matter are to be paid by the respondent.

Board Members Saidis and O'Connor dissented and would recommend a one year and one day suspension.

Board Members Wright, Suh and Pietragallo dissented and would recommend a lesser suspension and a shorter period of probation.

Board Member Nordenberg dissented and would recommend a six-month suspension and no probation.

Board Vice-Chair Rudnitsky did not participate in the May 18, 2004 adjudication.

## ORDER

And now, October 15, 2004, upon consideration of the report and recommendations of the Disciplinary Board dated July 15, 2004, the petition for review and response thereto, the request for oral argument is denied and it is hereby ordered that Gustee Brown be and he is suspended from the practice of law in the Commonwealth of Pennsylvania for a period of one year and one day and he shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.